The Honorable John Threet Prosecuting Attorney Fourth Judicial District Washington County Courthouse 280 North College, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
I am writing in response to your request for an opinion on the following two questions:
 1. A.C.A. § 9-12-312 provides that if alimony or child support is ordered to be paid through the Registry of the Court that a $36.00 annual fee be assessed and collected by the Circuit Clerk. In a case when both alimony and child support are ordered to be paid, may the clerk charge two annual fees: one for processing alimony payments and another for processing child support payments?
 2. In regards to County Attorneys, since the County Attorney handles the civil duties of the Prosecuting Attorney, may a County Attorney seek opinions from you directly?
RESPONSE
In my opinion, although the statute is not entirely clear and would benefit from legislative clarification, the answer to your first question is probably "no." The answer to your second question is "no," in my opinion.
Question 1 — A.C.A. § 9-12-312 provides that if alimony or childsupport is ordered to be paid through the Registry of the Court that a$36.00 annual fee be assessed and collected by the Circuit Clerk. In acase when both alimony and *Page 2 child support are ordered to be paid, may the clerk charge two annualfees: one for processing alimony payments and another for processingchild support payments?
This question requires reference to the following provisions of A.C.A. § 9-12-312 (Repl. 2002), which addresses various matters concerning alimony and child support:
 (d) All orders requiring payments of money for the support and care of any children shall direct the payments to be made through the registry of the court unless the court in its discretion determines that it would be in the best interest of the parties to direct otherwise. However, in all cases brought pursuant to Title IV-D of the Social Security Act, the court shall order that all payments be made through the Arkansas child support clearinghouse in accordance with § 9-14-801 et seq.
 (e)(1)(A) Except as set forth in subdivision (e)(5) of this section,[1] all orders directing payments through the registry of the court or through the Arkansas child support clearinghouse shall set forth a fee to be paid by the noncustodial parent or obligated spouse in the amount of thirty-six dollars ($36.00) per year.
 (B) The fee shall be collected from the noncustodial parent or obligated spouse at the time of the first support payment and during the anniversary month of the entry of the order each year thereafter, or nine dollars ($9.00) per quarter at the option of the obligated parent, until no children remain minor and the support obligation is extinguished and any arrears are completely liquidated.
A.C.A. § 9-12-312(d) and (e)(1) (Repl. 2002). *Page 3 
To summarize the most pertinent provisions of the statute: Child support is to be paid through the registry of the court, unless the court directs otherwise or the case is one brought pursuant to Title IV-D.[2] A $36.00 fee in connection with orders directing payment through the court or the clearinghouse[3] is to be paid by "the noncustodial parent or obligated spouse." And such fee is to be collected annually from "the noncustodial parent or obligated spouse" or quarterly "at the option of the obligated parent," until all children are emancipated and no further support is owed.
These provisions give rise to several issues that must be resolved in order to answer your question concerning the possibility of charging two fees pursuant to subsection 9-12-312(e)(1)(A). As an initial matter, it will be noted that subsection (d) of the statute makes no reference to the payment of alimony through the court registry, but instead only mentions payments for "the support and care of any children," i.e., child support. Your question nevertheless assumes that the statute provides for ordering alimony to be paid through the registry, apart from any child support obligation. This presumption is presumably founded upon subsection (e), wherein it makes reference to the "noncustodial parent or obligated spouse" (emphasis added) paying the fee set forth in "all orders directing payments through the registry of the court." See also A.C.A. § 9-12-312(g) ("The clerk may accept the support payment in any form of cash or commercial paper, including personal check, and may require that the custodial parent or nonobligated spouse be named as payee thereon."). The term "obligated spouse" understandably suggests a reference to alimony of the wife or husband as contemplated by A.C.A. 9-12-312(a)(1), which provides: "When a decree is entered, the court shall make orders concerning the alimony of the wife or the husband and the care of the children, if there are any. . . ."
While the statute is not a model of clarity in this regard, it may well be that the provision for directing payments through the registry of the court is not limited to *Page 4 
child support, but can include alimony of the wife or husband. Having acknowledged this possibility, I must point out another troubling provision that is more difficult to explain. According to subsection9-12-312(e)(1)(B), collection of the fee from the "noncustodial parent or obligated spouse" ends when "no children remain minor," and no further support is owed. This provision also curiously only gives the "obligated parent" the option of paying the fee quarterly.
These ambiguities have led me to examine the original act establishing this annual fee. See generally Central Southern Companies v.Weiss, 339 Ark. 76, 83, 3 S.W.3d 294 (1999) (noting that an ambiguous statute must be interpreted according to the legislative intent, and that the review "become an examination of the whole act.") The provision for payment through the registry of the court, and the collection of a fee in connection with orders directing such payment, was originally enacted under Act 989 of 1985. See Acts 1985, No. 989, § 1 (setting the fee at "one dollar ($1.00) for each payment to be paid by the non-custodial parent or obligated spouse," the fee to be "retained by the Clerk's office to offset administrative costs as a result of this Act.") A review of the 1985 act as a whole reveals that it is primarily concerned with collection of child support, and that it made comprehensive changes in the child support laws in response to federal mandates. See Title to Act 989 of 1985 ("An Act to Amend the Divorce and Alimony Laws of the State; to Provide Various Child Support Collection Techniques Mandated by P.L. 98-378 (Child Support Enforcement Amendments of 1984). . . ." The act provided a lien for child support,[4] as well as income withholding for child support, id. at § 7-18; and it established a "Child Support Enforcement Unit" to "administer the State Plan for child support enforcement required under Title IV-D of the Social Security Act of 1935. . . ." Id. at § 20; see also id. at §§ 2 1 — 30. The act's income withholding provisions are codified, as amended, at A.C.A. § 9-14-217 — 229 (Repl. 2002 and Supp. 2007). The Title IV-D related provisions are codified, as amended, at A.C.A. §9-14-206 — 216 (Repl. 2002 and Supp. 2007). *Page 5 
In my opinion, this history sheds significant light on the meaning of the words "non-custodial parent or obligated spouse" as used in A.C.A. § 9-12-312(e). The General Assembly was obviously responding to Title IV-D of the federal Social Security Act when it enacted Act 989 of 1985. In order to receive federal funds under Title IV-D, states are required to implement a plan for "spousal and child support" that must meet numerous requirements, including the enactment of laws "to improve child support enforcement effectiveness." 42 U.S.C. § 654(20)(A). Seealso 45 U.S.C. § 651, supra at n. 1. The term "spousal support" is defined in federal regulations as "a legally enforceable obligation assessed against an individual for the support of a spouse or former spouse who is living with a child or children for whom the individual also owes support." 45 C.F.R. § 301.1. Given the apparent intent underAct 989 of 1985 to meet the federal requirements, it seems reasonable that the act would be referring to support obligations in terminology used by the federal law. This leads me to conclude that the term "obligated spouse" in A.C.A. § 9-12-312(e) probably has reference to the obligation for "spousal support" as contemplated by Title IV-D, that is, a support obligation that encompasses both support for the spouse (or former spouse) and a child or children living with that individual. This conclusion reasonably follows, moreover, from the general rule that the intent reflected by an act as a whole should take precedence over any intent reflected by isolated words or sections. See Kifer v. LibertyMutual Insurance Co., 777 F.2d 1325 (8th Cir. 1986); Elizabeth ArdenSales Corp. v. Gus Blass Co., 150 F.2d 988, cert. denied 326 U.S. 773
(1945).
I note, additionally, that this view of the term "obligated spouse" explains the possible anomaly under subsection 9-12-312(e)(1)(B) regarding the annual $36.00 fee terminating when "no children remain minor," and no further support is owed. It may also explain why subsection (e)(1)(B) would state that the "obligated parent" has the option of paying the fee quarterly: the term "obligated parent" also covers the "obligated spouse," if the term "obligated spouse" is interpreted to reference one who also has a child support obligation.
Interpreting "obligated spouse" consistent with "spousal support" under the federal law also seems reasonable in light of the purpose served by the annual fee. Pursuant to A.C.A. § 9-12-312(e)(6), all moneys collected from the fee "shall be used by the clerk's office to offset administrative costs as a result of this subchapter." The original act stated that the fee was to offset administrative costs resulting from "this act." Acts 1985, No. 989, § 1. These costs arise from the clerk's obligation to "maintain accurate records of all support orders and *Page 6 
payments" made under the act; and such costs include expenses necessary to "purchase, maintain, and operate an automated data system for use in administering the requirements of [the] act." Id. (codified at A.C.A. § 9-12-312(e)(6) and (f)). A review of the 1985 act reveals that these record-keeping requirements clearly relate to tracking child support payments, further buttressing the view that the "obligated spouse" is one who has a child support obligation, along with an obligation to support a spouse or former spouse who is living with such child. Such "obligated spouse" who is paying child support through the registry of the court should understandably pay the fee that will be applied to tracking those payments.
With regard, then, to your specific question as to the collection of two fees under A.C.A. § 9-12-312, I believe the statute only contemplates one fee because the term "obligated spouse" likely encompasses the scenario where both alimony, i.e., support of the spouse or former spouse, and child support are ordered to be paid.
Question 2 — In regards to County Attorneys, since the County Attorneyhandles the civil duties of the Prosecuting Attorney, may a CountyAttorney seek opinions from you directly?
The Attorney General's opinion writing function is governed by A.C.A. § 25-16-706, which provides in relevant part:
 When requested, [the Attorney General] shall give his or her opinion to the prosecuting attorney of any district upon any legal question that concerns the financial interests of the state or any county and upon any question connected with the administration of the criminal laws of the state.
A.C.A. § 25-16-706(a)(2) (Repl. 2002).
The Attorney General is therefore required to give his or her opinion to the "prosecuting attorney" upon the matters enumerated in this statute. Given the clear distinction between the office of "prosecuting attorney" and the office or position of "county attorney," see A.C.A. § 14-14-902 (Repl. 1998), I must conclude that the answer to this question is "no." Subsection 25-16-706(a)(2) *Page 7 
offers no authority for a county attorney to request the opinion of the Attorney General.[5] Nor am I aware of separate authority for such requests.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:EAW/cyh
[1] Subsection 9-12-312(e)(5) states:
 In counties where an annual fee is collected and the court grants at least two thousand five hundred (2,500) divorces each year, the court may require that the initial annual fee be paid by the noncustodial parent or obligated spouse prior to the filing of the order.
A.C.A. § 9-12-312(e)(5) (Repl. 2002).
[2] Title IV-D of the Social Security Act, 42 U.S.C. § 651 etseq., established a federal and state cooperative program "[f]or the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available. . . ." Id. at § 651.
[3] The "clearinghouse" is the automated child support payment processing system operating under the auspices of the Office of Child Support Enforcement. See A.C.A. § 9-14-801(4)(A) (Repl. 2002) (defining "clearinghouse.")
[4] The lien provision originally stated that "[a]ny. . . . order which contains a provision for payment of alimony or support for any person through the Registry of the Court shall become a lien upon all property. . . . owned by the non-custodial parent. . . ." Acts 1985, No. 989, § 2 (emphasis added). However, this was clarified by Act 13 of the Second Extraordinary Session of 1986, see Title, to state that "[a]ny. . . . order which contains a provision for payment of money for the support and care of any child or children through the Registry of the Court shall become a lien. . . ." Id. at A.C.A. § 1. The clarification is perhaps understandable, given that the 1985 act applied the lien to the property of the non-custodial parent. The lien provision, as amended, is codified at A.C.A. §§ 9-14-230 — 231 (Repl. 2002 and Supp. 2007).
[5] A bill filed in the regular session of the 81st
General Assembly would have amended A.C.A. § 25-16-706(a)(2) to require the Attorney General to give his opinion to the "county civil attorney."See HB 1647 (1997 Reg. Sess.). The bill was not enacted into law.